### Franklin C. Orton, William N. Bock, impleaded with John H. Starkey v. The City of Lincoln.

1. CITIES AND VILLAGES—*Power of a City Clerk to Receive License Money.*—A clerk of a city incorporated under the general law has authority to receive license money from dramshop keepers, and the sureties upon his official bond are responsible for his failure to account for the same.

**Memorandum.**—Action upon a city clerk's bond. In the Circuit Court of Logan County; the Hon. GEORGE W. HERDMAN, Judge, presiding. Declaration in debt; trial by jury; verdict and judgment for plaintiff; appeal by defendants. Heard in this court at the May term, 1894, and affirmed. Opinion filed October 29, 1894.

APPELLANTS' BRIEF, BEACH & HODNETT, ATTORNEYS.

Appellants contended that it not being the duty of the city clerk to collect saloon license money, the sureties on his bond are not liable therefor. Sec. 16 Dramshop Act; Brandt on Suretyship and Guaranty, Sec. 451; People v. Pennock, 60 N. Y. 421. The power to make it the duty of the city clerk to collect and reserve saloon license money must be found in the charter, which is the general incorporation act, and is not given therein. Cook County v. McCrea, 93 Ill. 236; 1 Dillon Mun. Corp., Secs. 55 and 251; Rawlins v. City of Cerro Gordo, 32 Ill. App. 215; Emmons v. City of Lewiston, 132 Ill. 380; Heusing v. City of Rock Island, 128 Ill. 465.

After organization under the general law of the State, all ordinances in conflict with the general law are repealed. City of Cairo v. Bross, 101 Ill. 475. Courts bound to take notice of organization under the general law. City of Rock Island

v. Cuinely, 126 Ill. 408. The liability of sureties is *strict-issimi juris*, and can not be extended by the acts of others. People v. Pennock, 60 N. Y. 426; McCluskey v. Cromwell, 1 Kern. (N. Y.) 593; Supervisors v. Bates, 17 N. Y. 242; Loan Ass'n v. Nugent, 11 Vroom (N. J.) 215. A surety of an officer, is not liable for money received by his principal out of the line of his duties. People v. Pennock, 60 N. Y. 426; Henckler, Imp., etc., v. County Court, 27 Ill. 38; State v. White, 10 Rich. (S. C.) 442; Leigh v. Taylor, 7 B. & C. 491; Nolley v. Calloway County, 11 Mo. 447. The liability of a surety is strictly construed and can not be extended by implication. Stull v. Hance, 62 Ill. 52; McLain et al. v. People, use, etc., 85 Ill. 205; People v. Tompkins et al., 74 Ill. 482; Governor. v. Lagow, 43 Ill. 134.

A surety on an official bond is not liable for losses caused by the misconduct of the obligee. The People v. Toomey, 122 Ill. 308; Murfree on Official Bonds, Secs. 755, 788; O'Donohue v. Simmons, 31 Hun (N. Y.) 267; Brandt on Suretyship, Sec. 457; Pickering v. Day, 3 Houston, 474; Connell v. Crawford, 59 Pa. St. 196.

The law enters into the contract and is part of it. Murfree on Official Bonds, Sec. 193; People v. Pennock, 60 N. Y. 426.

To entitle the plaintiff to recover, it must prove its right by a preponderance of the evidence. Lincoln v. Stowell, 62 Ill. 84; Peaslee v. Glass, 61 Ill. 94; C., R. I. & P. R. R. Co. v. Easlenger, 44 Ill. 476; Boudreau v. Boudreau, 45 Ill. 480.

It is held that all corporate acts beyond the scope of the powers granted, are void. To doubt the power is to deny it. 2 Kent's Com. (12th Ed.), 288–289; Cooley's Const. Lim., 191; Dillon on Mun. Corp. (3d Ed.), Sec. 89; Bank of United States v. Dundridge, 12 Wheat. (U. S.) 68; Railroad Co. v. Harris, 12 Wall. (U. S.) 81; People v. Village of Crotty, 93 Ill. 180; City of Champaign v. Harmon, 98 Ill. 491.

APPELLEE'S BRIEF, E. C. MOOS AND E. D. BLINN, ATTORNEYS.

Appellees contended that the city clerk has the power under the statutes of this State to collect moneys for licenses;

citing sections 68, 105, 106, 107 and 108, chapter 24, Vol. 1, Starr & Curtis' Annotated Statutes.

Mr. Presiding Justice Wall delivered the opinion of the Court.

The appellee recovered a judgment for $1,122.46 against appellants and John H. Starkey, in an action of debt on the bond of said Starkey as city clerk. The principal question is whether the clerk had such authority to receive money paid for dramshop licenses as to make the sureties responsible for his failure to account therefor.

The bond was given to cover the term of two years beginning April 16, 1889, and was conditioned that the principal should "faithfully discharge the duties of his office and pay over all moneys that may come to his hands by virtue thereof." It was customary for the clerk to receive moneys paid in for licenses of all kinds, and account to the city treasurer, and in this way large amounts passed through his hands during the term in question, all of which was duly accounted for except the sum for which this judgment was rendered.

Much stress is laid by the appellants upon the language of Sec. 16 of the Dramshop Act, which provides :

" That hereafter it shall not be lawful for the corporate authorities of any city, town or village in this State to grant a license for the keeping of a dramshop, except upon the payment in advance into the treasury of the city, town or village granting the license, such sum as may be determined by the respective authorities of such city, town or village, not less than at the rate of five hundred dollars ($500) per annum."

This section was in force before the bond was given and it is argued that the money must be paid to the city treasurer by the party seeking the license, and that the clerk is not authorized to handle it at all.

In order to properly determine the question, it is necessary to consider what was the main purpose in view in the enactment of this provision, as well as to inquire what other statutory provisions and ordinances of the city relating to

the subject, were then in force, since all such provisions must be taken into account in order to ascertain the true construction of this provision.

The main purpose in this enactment was, probably, to provide that the license money should be paid in advance. The words "into the treasury," etc., are used in a general sense to indicate the final destination of the money, but not to designate the medium. It is not required that the money shall be paid to the treasurer in advance, but merely into the municipal treasury.

Section 68, of chapter 24, R. S., provides that: " All fines and forfeitures for a violation of ordinances, when collected, and all moneys collected for licenses, or otherwise, shall be paid into the treasury of the corporation at such times and in such manner as may be prescribed by ordinance."

Section 105 of the same chapter provides: " The city comptroller (if there shall be any city comptroller appointed, if not, then the clerk,) shall exercise a general supervision over all officers of the corporation charged in any manner with the receipt, collection or disbursement of corporate revenues, and the collection and return of all such revenues into the treasury."

Section 108 provides: " When there shall be appointed in any city a comptroller, the city council may, by ordinance or resolution, confer upon him such powers, and provide for the performance of such duties by him, as the council shall deem necessary and proper, and all the provisions of this act relating to the duties of city clerk, or the powers of the city clerk, in connection with the finances, the treasurer and collector, or the receipt and disbursements of the money of such city, shall be exercised and performed by such comptroller, if one there shall be appointed, and to that end and purpose, wherever in this act heretofore the word ' clerk ' is used, it shall be held to mean ' comptroller,' and wherever the ' clerk's office ' is referred to, it shall be held to mean comptroller's office."

From the first of these provisions it is clear that the legislature contemplated that money would, in various cases,

come to the hands of city officials other than the treasurer, and through them pass to him. The two latter gives the clerk general supervision of the fiscal affairs with all the functions usually exercised by a comptroller and thus provide for a situation which would make it convenient and very often indispensable that corporate funds should frequently be in hands of the clerk, temporarily, at least.

It would naturally happen so very often, and the legislature must have so intended. At the time this bond was given the following provisions of the ordinances of the city were in force:

" Section 6. The city clerk shall keep a license register in which he shall enter the name of each person licensed, for what purpose licensed, the place of business, the date of the license, the amount paid therefor, and the date and the expiration of the same. He shall pay into the city treasury on the first Monday of each month all moneys received by him on account of license; he may charge and receive a fee of one dollar for each license issued by him, and a fee of fifty cents for certifying the consent of the city council to the assignment, transfer or change of the place of business of any license."

" Section 2. All city officers, except the city clerk, collecting or receiving any money on account of the city, shall pay the same as fast as collected to the city clerk, in the same kind of funds as received by them, and shall, on the first Monday of each month, report to the city council an accurate statement of all moneys received by them for the preceding month, specifying the amount, from whom and on what account received. The city clerk shall, in like manner, pay over all city money received by him to the city treasurer, and shall make a like report, provided that any city officer collecting any city money or any fine or any execution, shall pay the same over to the court imposing said fine or issuing said execution."

Here is clear recognition of the power of the clerk to receive such funds.

These provisions were enacted before the city was reor-

ganized under the general law and continued in force until repealed according to the terms of Sec. 11, of Ch. 24.

An ordinance passed in 1885, provided that dramshop licenses might be granted by the council for a period not exceeding one year and not less than three months, upon payment "into the city treasury in advance," at the rate of $500 per annum, it being designed, no doubt, to comply with the statute in reference to the amount and advance payment, and the words " city treasury " being used here, as similar words are in the statute, in a general sense.

Considering all these enactments, statutory, as well as municipal, together, we entertain no doubt that the clerk had authority to receive license money and that his bond should protect the city against loss in that behalf. The judgment is affirmed.